## Wells v. Combs, et al.

(Decided November 18, 1924.)

### Appeal from Perry Circuit Court.

Husband and Wife—Principal and Agent—Authority to Collect May be Implied—Wife Permitting Husband to Transact Business and Collect Notes Cannot Recover Again on Notes.—Where principal has by voluntary act placed agent in such situation that person of ordinary prudence, conversant with business usages and nature of particular business, is justified in presuming that such agent has authority to collect sums due to principal, debtor will be protected in making payments to agent, and this is true, where wife permits husband to transact her business and collect her notes.

W. C. EVERSOLE for appellant.

FAULKNER, STANFILL & FAULKNER for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

Minerva Wells was the owner of a tract of land in Perry county and on July 11, 1916, she and her husband, William Wells, executed a deed to D. Y. Combs, etc., for the coal under this land. The consideration of the deed was $17,818.00, part of which was paid in cash and for

the remainder notes were executed. All the notes were paid except the last note for $4,939.33, due July 16, 1920.

Combs, etc., entered into a lease contract with the Hazard Blue Grass Coal Corporation whereby they leased the coal to it and it agreed to pay on the purchase money all the royalty until the indebtedness was extinguished. On July 12, 1920, Minerva Wells brought this suit to recover on the last note, alleging that it was wholly unpaid. The defendants filed answer pleading certain payments. The plaintiff denied that these payments had been made. The amount in controversy was $1,139.40. The remainder of the note was paid. On final hearing the circuit court gave judgment in favor of the defendants. Minerva Wells appeals.

The proof shows without contradiction that the amount in controversy was paid to William Wells, the husband of Minerva Wells. The proof also shows that after this money had been paid to her husband she and her son went to the company and notified it not to pay any other money coming on the royalty to her husband, and no more was paid to the husband after this. The proof also shows that the husband made the trade with D. Y. Combs and his associates and thereafter they proposed to lease to the corporation. The corporation was not satisfied with the terms of the lease. Thereupon negotiations were had between the corporation and William Wells by which certain additional privileges were given the corporation in getting out the coal. These negotiations were conducted entirely by William Wells; his wife took no part in them; the husband signed the papers and took them home for his wife to sign; she signed them and they were returned to the company. The whole business between the company and them was conducted by the husband, acting for his wife, and the company proceeded to make payment to the only person whom they had ever really known in the transaction. This ran along for several years without complaint. In fact, no complaint was made until after the first two notes had been paid off and a large part of the third note was paid. In 21 R. C. L. 867, the rule is thus well stated:

"Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to collect

sums due to the principal, the debtor will be pretected in case he relies upon the appearances of authority.''

This rule is equally applicable where the husband acts as agent for his wife as in other cases.

''It is not necessary that the husband's appointment as agent should be in writing, or that particular words be used to create the agency, since by her acts and conduct in connection with the transaction in issue she may constitute the husband her agent.'' 30 C. J. 849.

Judgment affirmed